**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR No. 07-48ML** |
| | : | |
| | : | |
| **JAMES MANNING** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR ADJUSTMENT FOR LESSER ROLE IN THE OFFENSE**

The United States opposes the defendant's "Motion for Adjustment for Lesser Role in the Offense", for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Peter F. Neronha

PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov

Dated: July 20, 2007

**Certificate of Service**

I hereby certify that on the 20th day of July, 2007, I caused a copy of the within "Government's Opposition To Defendant's Motion For Adjustment For Lesser Role In The Offense" to be served by way of the Electronic Case Filing System upon Kevin J. Fitzgerald, Assistant Federal Defender and counsel for the defendant.

/s/ Peter F. Neronha
PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR No. 07-48ML** |
| | : | |
| | : | |
| **JAMES MANNING** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR ADJUSTMENT FOR LESSER ROLE IN THE OFFENSE**

The defendant contends that he is entitled to a downward adjustment in offense level pursuant to Sentencing Guidelines Section 3B1.2 for having played a "minor role" in the interstate travel/extortion offense of which he now stands convicted. A downward adjustment is warranted, he claims, because he did nothing more than make "an introduction" in a scheme to extort money from two Massachusetts men. The facts belie the claim. The defendant participated in the planning of the extortion scheme, advocated the use of violence in carrying it out, and performed a, if not the, critical role the scheme -- bringing together two "strong-arm" men who did not know one another, so that they in turn could confront the intended extortion victims.

**Facts**

On Thursday, April 6, 2006, the defendant met with Anthony St. Laurent and Ricky Silva at St. Laurent's home in Johnston, Rhode Island. During the meeting, the men finalized a plan to extort two Massachusetts men whom St. Laurent claimed owed him money. St. Laurent, Silva and the defendant agreed that the defendant would lead Silva from Rhode Island to Massachusetts to meet Larry Crites, whom Silva did not know. Once the defendant had introduced Silva to Crites, those two men would in turn locate and extort the two intended victims. During the April 6 meeting, after St. Laurent told Silva to "bash" the victims if they refused to pay, the defendant counseled Silva not to "do it in front of nobody." The defendant also reassured Silva that he would be able to link him up with Crites. When St. Laurent stated that at 10:00 PM, "Larry" (Crites) would be in a bar, and that the defendant would go into the bar and find him, the defendant told Silva that he would "get [Larry] out, don't worry." The defendant described "Larry" as a "strong-arm guy."

Shortly after this meeting, the defendant drove from Rhode Island to Massachusetts, with Silva following in a separate car. During a conversation at a stop along the way, the defendant described one of the intended extortion victims as a "punk" and told Silva that if this intended victim was grabbed "by the neck

he'll fucking die, believe me." The defendant told Silva that once they arrived at the bar he was leading them to, he would go into the bar, find "Larry", and bring him out. The defendant told Silva that Crites had wanted "to be with the [] Saint (referring to St. Laurent) the longest time. He wants to do strong-arm with them."

Following this conversation, the defendant drove to a bar located in Taunton, Massachusetts, followed by Silva. Once at the bar, the defendant went inside to find Crites, while Silva waited outside. Unable to find him in the bar, the defendant located Crites elsewhere, and at approximately 10:00 PM, brought him to the parking lot where Silva was waiting. The defendant introduced Crites to Silva and effectively vouched for him, stating that Crites was a friend of St. Laurent's. During the meeting, the defendant confirmed that according to St. Laurent's instructions, there were two men from whom money was to be collected. Crites stated that to find one of the intended extortion victims, they needed to go to a particular bar in Raynham, Massachusetts. The defendant told Crites that he had to go into the bar to locate this intended victim because Silva didn't know who he was. Crites agreed. Subsequently, Silva and Crites attempted to find one of the intended extortion victims at two separate locations in Massachusetts, while the defendant

returned to Rhode Island. Ultimately, the attempts by Silva and Crites to locate the intended extortion victim were unsuccessful.

**Argument**

United States Sentencing Guideline Section 3B1.2 provides that, "based on the defendant's role in the offense," a defendant's offense level may be reduced by two levels if he was "a minor participant in any criminal activity," and by three levels if the defendant's role in the offense is less than "minor", but more than "minimal." "In seeking a [S]ection 3B1.2 adjustment, a defendant 'has the burden of proving that he is both less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of comparable crimes.'" United States v. Melendez, 301 F.3d 27, 34 (1st Cir. 2002)(quoting United States v. Ortiz-Santiago, 211 F.3d 146, 149 (1st Cir. 2000))(emphasis added). Application Note 3(C) provides that whether to grant an adjustment under Section 3B1.2 is a "[f]act-[b]ased [d]etermination":

> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent on the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted.

Here, there were four men principally involved in the extortion scheme: St. Laurent, the defendant, Silva and Crites. It is true that the extortion scheme originated with St. Laurent; he identified the targets of the scheme and assigned the roles that the defendant, Silva and Crites would play in it. Yet this does not necessarily make him more culpable in the scheme than the defendant, Silva and Crites. After all, it was those three men, not St. Laurent, who put the plan into action while St. Laurent remained behind in Johnston.

Furthermore, even if St. Laurent can somehow be distinguished from the others on the culpability scale, this does not warrant a "minor role" adjustment for the defendant. As noted, it is not enough for the defendant to establish that he is less culpable than another participant in the scheme; he must establish that he is less culpable than most of the other participants, and further that he is less culpable than "most other miscreants convicted of similar crimes." United States v. Brandon, 17 F.3d 409, 460 (1st Cir. 1994)(defendant not entitled to minor role adjustment notwithstanding that he was less culpable than major participants in scheme because defendant was "not less culpable than most of the other defendants let alone substantially less culpable than an average defendant.") He can do neither. He is at least as culpable as the two remaining

participants in the scheme, Silva and Crites. The fact that the defendant, Silva and Crites played different roles in the Travel Act offense of which they have been convicted does not mean that the defendant's role was any less significant than that of Silva and Crites. As already noted, without the defendant's willingness to lead Silva to Crites, the extortion scheme could not have gone forward. And the defendant's role went well beyond bringing the two strong-arm men together; he weighed in with advice on how to proceed, and recommended the use of violence with respect to one of the intended victims. There is nothing that distinguishes the defendant from Silva or Crites with respect to his degree of involvement in the offense of conviction, nor is there anything that distinguishes him from the average defendant convicted of a Travel Act offense.

At bottom, the defendant was "a player rather than [] a dabbler". Ortiz-Santiago, 211 F.3d at 149. He was St. Laurent's front man, charged with making sure everything was in place to bring the extortion scheme to a successful conclusion. His motion for a downward adjustment for "minor role" in the offense should therefore be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Peter F. Neronha

PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov

Dated: July 20, 2007

## Certificate of Service

I hereby certify that on the 20th day of July, 2007, I caused a copy of the within "Government's Memorandum In Opposition To Defendant's Motion For Adjustment For Lesser Role In The Offense" to be served by way of the Electronic Case Filing System upon Kevin J. Fitzgerald, Assistant Federal Defender and counsel for the defendant.

/s/ Peter F. Neronha

PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov